# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

WEST VIRGINIA INVESTMENT MANAGEMENT BOARD,

        Plaintiff,

v.                                        CIVIL ACTION NO.  2:10-cv-00461

RESIDENTIAL ACCREDITED LOANS, INC. et al.,

        Defendants.

## MEMORANDUM OPINION AND REMAND ORDER

Before the Court is Plaintiff's Motion for Remand and for Costs [Docket 17].  For the reasons set forth below, this motion is **GRANTED IN PART AND DENIED IN PART**.

### *I. BACKGROUND*

This case arises from the allegedly unlawful actions of Defendants Residential Accredited Loans, Inc. ("RALI"); Residential Funding Company, LLC ("RFC"); Deutsche Bank Securities Inc. ("DBS"); and Credit Suisse Securities (USA) LLC ("CSS").  Plaintiff, the West Virginia Investment Management Board ("WVIMB"), alleges violations of the West Virginia Uniform Securities Act, negligent misrepresentation, and fraud in connection with a WVIMB securities purchase.

On March 4 2010, Plaintiff filed a complaint in the Circuit Court of Kanawha County, West Virginia.  Defendants filed a notice of removal on April 7, 2010, seeking to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441.  According to the notice of removal, RALI is a Delaware corporation with its principal place of business in Minnesota, RFC is a Delaware corporation with its principal place of business in Minnesota, DBS is a Delaware

corporation with its principal place of business in New York, and CSS is a Delaware limited liability company with its principal place of business in New York. Defendants contend that the WVIMB is a West Virginia citizen, and therefore diversity jurisdiction exists. The WVIMB disagrees, arguing that it is an arm of the state and cannot be a citizen for diversity purposes. Plaintiff timely filed the pending motion to remand pursuant to 28 U.S.C. § 1447(c) on May 6, 2010. Plaintiff maintains that because it is an arm of the state of West Virginia, this Court is without jurisdiction to entertain the complaint. This matter is now fully briefed and ripe for the Court's consideration.

## II. APPLICABLE LAW

The asserted basis of the Court's jurisdiction over this removed action is that there is complete diversity of citizenship among the parties and the amount in controversy exceeds the jurisdictional threshold. 28 U.S.C. § 1332(a). The amount in controversy requirement is not at issue, but the parties disagree as to whether complete diversity exists. The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999). If Plaintiff is a citizen of West Virginia, then complete diversity exists. However, if Plaintiff is an arm of the state, then it cannot be sued in federal court through diversity jurisdiction. *S.C. Dept. of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 2008).

United States "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district

2

and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Generally, the party seeking removal bears the burden of showing that federal jurisdiction exists. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand. *Id.*

The propriety of the Court's jurisdiction over a removed action is evaluated in light of the record as it existed at the time of removal. *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F. Supp. 2d 633, 635 (S. D. W. Va. 2009). In this case, the record as of the date the notice of removal was filed reflects that the WVIMB is the only plaintiff and that RALI, RFC, DBS, and CSS are named as defendants.

"It is well established that for purposes of diversity jurisdiction, a State is not a 'citizen.'" *Hoover*, 535 F.3d at 303 (citing *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973)). Furthermore, "a public entity created under state law, which is 'the arm or alter ego of the State,' is likewise not a citizen for purposes of diversity jurisdiction." *Id.* However, a public entity can be a citizen for diversity jurisdiction purposes if the entity was created by the state, functions independently of the state, and has the authority to sue and be sued. *Id.* Therefore, if the WVIMB is an arm or alter ego of the State of West Virginia, the Court must remand this action.

Four factors are considered to determine if an entity is functioning independently of the state or functioning as an arm or alter ego of the state:

> (1) [W]hether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the

    entity's relationship with "the State [is] sufficiently close to make the entity an arm of the State."

*Hoover*, 535 F.3d at 303 (citing *Md. Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255, 261-62 (4th Cir. 2005) and *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987), and quoting *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)).

### III. DISCUSSION

  *A. Recovery to Inure to the Benefit of the State*

  The first factor, whether any recovery will inure to the benefit of the state, is generally held to be the most important consideration in determining whether an entity is an arm or alter ego of the state. *Ram Ditta*, 822 F.2d at 457; *Ellerbe*, 407 F.3d at 261-62.

  Plaintiff alleges that a recovery in this case would inure to the benefit of the state. The WVIMB manages public employee retirement funds. W. Va. Code § 12-6-1a. When the funds need to be paid, the WVIMB pays that money to the state. § 12-6-9a(g). Then, any money that is due is paid with a check issued by the State Treasurer. § 12-3-1. Therefore, Plaintiff reasons that any recovery in this action for the WVIMB would be transferred to the State Treasury in order for employee retirement funds to be paid.

  Defendants contend that a recovery in this action would not inure to the sole benefit of the State, but "would be the sole property of the *pension plans* that invested in the securities at issue in this case, and not the State." (Docket 23, p. 9 (emphasis in original).) However, *Hoover* held that the focus is not on "whether funds are retained in a particular account of the State or in the general fund of the State treasury," but on the broader inquiry of "whether recovery . . . would inure *to the benefit* of the State." *Hoover*, 535 F.3d at 305 (emphasis in original).

A similar argument to the one made here by Defendants was made by the defendants in a recent Southern District of West Virginia case also involving the WVIMB. *W. Va. Inv. Mgmt. Bd. v. Variable Annuity Life Ins. Co.*, No. 2:09-cv-1335, 2010 WL 2944847 (S.D. W. Va. July 26, 2010). In dealing with the first factor, Judge Copenhaver held that even though the Teachers Retirement System ("TRS") funds were kept separately from the State Treasury and were only used to pay members' retirements, the state was still mandated to make up any of the TRS's unfunded liabilities. *Id.* at *5 (citing *W. Va. Educ. Ass'n v. Consol. Pub. Ret. Bd.*, 194 W. Va. 501 (1995)). Therefore, the court held that the recovery to the WVIMB would inure to the benefit of the state. *Variable Annuity*, 2010 WL 2944847 at *5.[1] Likewise, a recovery in this action to the WVIMB would also inure to the benefit of the state.

    *B.    Degree of Autonomy*

Under the second factor, the degree of autonomy exercised by the entity, the Court considers "whether the state retains a veto over the entity's actions, the origins of the entity's funding, and who appoints the entity's directors." *Ellerbe*, 407 F.3d at 261 (citing *Ristow v. S.C. Ports Auth.*, 58 F.3d 1051, 1052 (4th Cir. 1995)). Defendants argue that the WVIMB exercises considerable autonomy from the state because it is labeled as an "independent board" under West Virginia law. *See* W. Va. Code § 12-6-1a. In addition, Defendants state that the WVIMB may sue and be sued, manage its assets, pay its liabilities, promulgate rules and regulations, and formulate investment policies. (Docket 23, p. 12 (citing § 12-6-5 and § 12-6-9(a)(c)).) "However, an entity can retain

---

[1] In the instant action, Defendants argue that *Consol. Pub. Ret. Bd.* and *Variable Annuity* do not apply because those cases dealt with the TRS. However, the holding in *Consol. Pub. Ret. Bd.* is not limited to the TRS, but recognizes that the state employees' pension rights are a constitutional obligation of the state. 194 W. Va. at 510 (citing *Dadisman v. Moore*, 181 W. Va. 779 (1989)).

5

some 'operational independence' and still be 'closely tied to the state.'" *Variable Annuity*, 2010 WL 2944847 at *5 (quoting *Ellerbe*, 407 F.3d at 264).

Plaintiff contends that the WVIMB is "subject to significant State oversight and control." (Docket 19, p. 14.) The WVIMB is composed of ten members that are appointed by the Governor and three other members—the Governor, the State Auditor, and the State Treasurer. W. Va. Code § 12-6-3. "The fact that the Governor sits on the board of the [WVIMB] and appoints a substantial majority of the board members is a clear indicator of state control." *Variable Annuity*, 2010 WL 2944847 at *6 (citing *Hoover*, 535 F.3d at 307). The Governor also serves as the Chairman of the WVIMB and has the authority to remove the members of the WVIMB, except the State Auditor and the State Treasurer, in cases of "gross negligence or misfeasance." W. Va. Code § 12-6-4; § 12-6-3.

In *Variable Annuity*, the court contrasted the WVIMB to the entity in *Ram Ditta*. *Variable Annuity*, 2010 WL 2944847 at *6. In *Ram Ditta*, the entity did not have control over appointing or removing entity members and the entity's budgets was not approved by the state. However, the Governor does have appointment and removal authority over the WVIMB, and the WVIMB is "required to undergo an annual audit and report its operational status to the Governor, State Treasurer, State Auditor, President of the Senate and Speaker of the House." *Id.* (citing W. Va. Code §§ 12-6-6 and 12-6-14; *Ellerbe*, 407 F.3d at 264-65). In *Variable Annuity*, the court also noted that the WVIMB does not have the power to levy taxes, which is a strong indication that an entity is an arm of the state. *Variable Annuity*, 2010 WL 2944847 at *6 (citing *Ellerbe*, 407 F.3d at 264 and *Kashani v. Purdue Univ.*, 813 F.2d 843, 846 (7th Cir. 1987)).

The court concluded that the WVIMB does not "exercise significant autonomy from the State." *Variable Annuity*, 2010 WL 2944847 at *6. Even though the WVIMB is labeled as an

independent board, the state controls the WVIMB due to the composition of the members of the WVIMB and the reporting and auditing requirements. Thus, the WVIMB is "ultimately under the control of the State and its Governor and other elected officers." *Id.*

  C. *State Versus Non-State Concerns*

Plaintiff argues that the WVIMB deals with statewide concerns because the state guarantees the pensions of public employees and because the WVIMB manages statewide retirement plans. In dealing with this third factor, Defendants only argue that the WVIMB is similar to a Wisconsin entity that was not found to be an arm of the State of Wisconsin. *See Roche v. Lincoln Prop. Co.*, 175 F. App'x 597 (4th Cir. 2006).

In *Variably Annuity*, the court found that the WVIMB is clearly involved with statewide concerns. *Variable Annuity*, 2010 WL 2944847 at *7. The court noted that the WVIMB funds matters of state-wide concern and has the purpose to modernize investments for the state and its subdivisions. Even though the WVIMB does invest funds dealing with local concerns, it does so with an eye to state-wide concerns. *Id.* In addition, "the legislature has declared that 'prudent investment provides diversification and beneficial return not only for public employees but for all citizens of the state . . . .'" *Id.* (quoting W. Va. Code § 12-6-1a(c)). Therefore, the WVIMB deals more with state concerns as opposed to non-state and local concerns.

  D. *How State Law Treats the Public Entity*

This Court also agrees with the analysis in *Variable Annuity* regarding the final factor:

> The legislature intended the [WVIMB] to have an independent board and staff, immune to changing political conditions with operational control over its daily activities. Nevertheless, other statutory law leans toward the [WVIMB] being an arm or entity of the state in that it must submit to an annual audit, it must report its operational status to five different state constitutional officers in the executive and

>legislative branches, its board is occupied by three state officials and chaired by the Governor, and the Governor appoints the remaining ten board members.

*Variable Annuity*, 2010 WL 2944847 at *7 (internal citations omitted). Additionally, the WVIMB is represented in the instant action by Special Assistant Attorneys General, which is identical to the representation in *Variable Annuity*. Thus, while West Virginia law does not expressly declare the WVIMB to be an arm or alter ego of the state, "it is ultimately under the control of and must answer to the Governor as well as other constitutional officers of the State." *Id.*

After reviewing Plaintiff's and Defendants' arguments, the *Hoover* factors, and the *Variable Annuity* opinion, it is apparent that the WVIMB is an arm of the State of West Virginia. Thus, WVIMB's presence as the sole plaintiff in this case eliminates diversity. Accordingly, the Court **FINDS** that it may not exercise jurisdiction over this removed action, and **GRANTS** the motion to remand.

### IV. COSTS

Plaintiff also moves for Defendants to be required to pay costs, expenses, and attorney fees as a result of removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Any such award is at the Court's discretion, and may be made whether or not removal was in bad faith. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). In *Martin v. Franklin Capitol Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." The inquiry "should recognize the desire to deter removals sought for the purpose of prolonging

8

litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

A defendant has an objectively reasonable basis for seeking removal where there is some clear authority, even if outside the court's jurisdiction, which supports the removing party's position regarding the issue before the court. *See Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc*., 416 F. Supp. 2d 1081, 1090 (D. Kan. 2006). However, where "[a] cursory examination of the applicable law would have revealed that the federal district court does not have jurisdiction over [a] case", removal is "ill-founded" and an award of reasonable attorney fees and costs is appropriate. *Husk v. E.I. Du Pont de Nemours & Co.*, 842 F. Supp. 895, 899 (S.D. W. Va. 1994) (Haden, C.J.).

Defendants assert diversity jurisdiction as the basis for removal in this action, arguing that WVIMB is not an arm of the State of West Virginia and can be sued in federal court. Defendants rely mainly on *Roche*, an unpublished Fourth Circuit decision that found that a similar Wisconsin entity was not an arm of the state. The *Variable Annuity* opinion, which established that the WVIMB is an arm of the state, was not decided until several months after Defendants removed. Prior to *Variable Annuity*, no court had made that determination. Thus, Defendants' attempt to remove this action to federal court appears to have been objectionably reasonable. Accordingly, Plaintiff's request for costs, expenses, and attorney fees is **DENIED**.

*IV. CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion to Remand [Docket 17] is **GRANTED IN PART AND DENIED IN PART.** The Court hereby **LIFTS** the stay in this case, and **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia, for further proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and a certified copy of this Order to the Clerk of the Circuit Court of Kanawha County.

ENTER: August 26, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE